UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 2:20-cr-00039-NT-1 |
| ) | |
| GILBERT PEREZ, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION FOR
RELEASE PENDING APPEAL**

Before me is the Defendant's motion seeking to remain on bond while he appeals his conviction ("**Def.'s Mot.**"). For the reasons stated below, the motion is **DENIED**.

**BACKGROUND**

On August 30, 2019, Sergeant Jason Conant and Trooper Ryan Dolan of the Massachusetts State Police North Shore Gang Task Force (the "**officers**") were in the midst of a drug investigation when they encountered Defendant Gilbert Perez, whom they suspected of participating in drug activity. Decision and Order on Def.'s Mot. to Suppress Evid. 1–5 ("**Order**") (ECF No. 136). Mr. Perez attempted to run from the officers but tripped and fell. Order 3–4. Sergeant Conant then caught up with Mr. Perez, held him on the ground, face down, and pulled a backpack off of Mr. Perez's person. Order 4. Trooper Dolan handcuffed Mr. Perez and sat him up on the pavement. Order 4. Sergeant Conant carried the backpack out of reaching distance of Mr. Perez and opened up the backpack on either the hood or the roof of Trooper

Dolan's car. Order 4. Inside the backpack, Sergeant Conan found fentanyl and cocaine. Order 4. The officers then arrested Mr. Perez. Order 5.[1]

On March 13, 2020, Mr. Perez was charged in a one-count Indictment with conspiracy to distribute fentanyl and cocaine. Indictment (ECF No. 42). The Defendant subsequently filed a motion to suppress the drugs that were found in the backpack, arguing that the officers lacked probable cause to arrest Mr. Perez or to search the backpack. Def.'s Mot. to Suppress Evidence 4–6 (ECF No. 68). The Government defended the officers' actions on the grounds that they had conducted a *Terry* stop supported by reasonable suspicion and that they later developed probable cause to search the backpack. Gov't's Resp. in Opp'n to Def.'s Mot. to Suppress 10–16 (ECF No. 79). The parties later filed supplemental briefing, which sharpened the relevant issues. In that briefing, the Government primarily justified the search of the backpack on the grounds that probable cause existed to arrest Mr. Perez and that the search of the backpack was conducted as part of a search incident to Mr. Perez's arrest. Gov't Post Hearing Br. in Opp'n to Def.'s Mot. to Suppress ("**Gov't's Post-Hearing Br.**") 8–29 (ECF No. 128). In particular, the Government relied on a First Circuit case from 1975—*United States v. Eatherton*—that had allowed the search of a briefcase in a case with analogous facts. Gov't's Post-Hearing Br. 16–17 (citing 519 F.2d 603 (1st Cir. 1975)). The Government acknowledged that, more recently, the

---

[1] These facts are derived from Judge Hornby's order denying the Defendant's motion to suppress. Decision and Order on Def.'s Mot. to Suppress Evid. 1–5 ("**Order**") (ECF No. 136). I take these facts as true because I do not consider it appropriate to second-guess any of Judge Hornby's factual findings at this stage of the proceedings.

2

Supreme Court decided *Arizona v. Gant*, 556 U.S. 332, 343 (2009), which some courts have interpreted to call into doubt the legality of the search of a container that has been removed from an arrestee's person, as in *Eatherton* and as in the case of Mr. Perez. Gov't's Post-Hearing Br. 18–20. But in addition to its argument that *Gant* did not upend the vitality of *Eatherton* (and that the cases in which courts have drawn contrary conclusions were wrongly decided), the Government has also argued that the officers relied in good faith on *Eatherton* as binding circuit precedent, which means that the evidence derived from the backpack should not be excluded even if *Gant* dictates that it was illegally obtained. Gov't's Post-Hearing Br. 17–20, 29–31.

In response, the Defendant argued that there was no probable cause to justify his arrest and that, even if there was, the search of the backpack was not a valid search incident to arrest. Def.'s Post-Hearing Mem. in Supp. of Suppression ("**Def.'s Post-Hearing Br.**") 6–20. (ECF No. 134). In particular, it appears that the Defendant argued that *Eatherton* is no longer good law and that *Gant* instead controls. Def.'s Post-Hearing Br. 15–19. The Defendant also argued that the officers could not have been acting in reasonable reliance on *Eatherton* because of differences in Massachusetts law, and thus that the good faith exception did not come into play. Def.'s Post-Hearing Br. 20–21.

Judge Hornby denied the Defendant's motion to suppress, finding, as relevant here, that probable cause existed to arrest Mr. Perez and that the officers lawfully search the backpack incident to that lawful arrest. Order 5–9. With regard to that second holding, Judge Hornby determined that *Eatherton* remained good law and

3

that it was dispositive. Order 7–9. While noting that it may well be that *Gant* calls into question *Eatherton* and thus that the search of Mr. Perez's backpack was unlawful, it was "for the First Circuit to decide" whether *Gant* "cast *Eatherton* 'into disrepute.' " Order 9. Having already found that the evidence should not be suppressed, Judge Hornby did not reach the issue of the applicability of the good faith exception.

On October 28, 2021, Mr. Perez pleaded guilty to the Indictment, although, in doing so, he reserved his right to appeal the denial of his suppression motion. Conditional Plea (ECF No. 156); Minute Entry (ECF No. 157). On February 17, 2022, Judge Hornby sentenced Mr. Perez to sixty months of imprisonment but allowed Mr. Perez to self-report. Minute Entry (ECF No. 198). The Defendant subsequently filed the instant motion to remain on bond during the pendency of his appeal. Def.'s Mot. (ECF No. 207).

## STANDARD OF REVIEW

A defendant who has been convicted and sentenced to a term of imprisonment must be detained pending appeal unless four judicial findings are made: (1) that there is clear and convincing evidence that the defendant "is not likely to flee"; (2) that there is clear and convincing evidence that the defendant "is not likely to . . . pose a danger to the safety of any other person or the community if released"; (3) "that the appeal is not for the purpose of delay"; and (4) "that the appeal . . . raises a substantial question of law or fact likely to result in" (as relevant here) reversal. 18 U.S.C. § 3143(b)(1). In particular cases—that is, in those cases where there is a presumption

4

that detention is appropriate—a fifth finding is required: that "it is clearly shown that there are exceptional reasons why . . . detention would not be appropriate." 18 U.S.C. §§ 3145(c), 3143(b)(2), 3142(e)(2), (f)(1)(C). This is one of those cases.

As I explain in greater detail below, the most salient requirement here is the fourth one. That requirement itself has two prongs—the substantiality prong and the likelihood prong. *United States v. Zimny*, 857 F.3d 97, 99 (1st Cir. 2017). The substantiality prong requires that the appeal raise a substantial question of law or fact, meaning that the case involves "a 'close' question or one that very well could be decided the other way." *Id.* at 100 (quoting *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985)). "[T]he likelihood prong proceeds on the assumption that the substantial question of law or fact 'is determined favorably to [the] defendant on appeal,' " *id.* (quoting *Bayko*, 772 F.2d at 522), and requires that the result "not be harmless or unprejudicial," *Bayko*, 772 F.2d at 523.

## ANALYSIS

The Government does not dispute the first, second, third, or fifth requirements, Gov't's Obj. to Def.'s Mot. for Release Pending Appeal ("**Gov't's Opp'n**") 4 (ECF No. 218), and I find that those requirements have been met. The only thing left for me to decide, then, is whether the Defendant raises a substantial question of law[2] that, if decided in his favor, would not be harmless or unprejudicial.

---

[2]     Both parties appear to agree that the crucial question here is a legal one, not a factual one.

**I.    The Substantiality Prong**

The "substantial question" that the Defendant identifies is the question of whether the search of Mr. Perez's backpack was a valid search incident to arrest. Def.'s Mot. 4–7. What this comes down to, really, is whether *Eatherton* remains good law in light of *Gant*. *Eatherton* upheld as a search incident to arrest the search of a briefcase that the defendant had dropped immediately prior to being arrested at a point shortly after the defendant had been secured inside of a law enforcement vehicle. 519 F.2d at 609–10. *Gant*, meanwhile, held that the search-incident-to-arrest requirement encompasses only "the arrestee's person and the area 'within his immediate control' . . . mean[ing] 'the area from within which he might gain possession of a weapon or destructible evidence.' " 556 U.S. at 339 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). But because *Gant* arose in the context of the search of a vehicle (after the arrest of the driver), *see id.* at 335–36, it is not necessarily obvious that *Gant* extends to a search incident to arrest outside of the vehicle context, as in the cases of *Eatherton* and of Mr. Perez.

The Government contends that *Gant* did not disrupt the holding of *Eatherton* and some older Supreme Court cases, which "continue to allow the warrantless searches of containers found on the person of an arrestee incident to their arrest and within a reasonable time thereafter." Gov't's Opp'n 6–7.[3] As a result, the Government

---

[3]    The Government also argues that the search of Mr. Perez's backpack was a valid search incident to arrest "because there was still a reasonable possibility that he could access the bag." Gov't's Obj. to Def.'s Mot. for Release Pending Appeal 7 (ECF No. 218). This argument appears to be quite weak in light of Judge Hornby's factual finding (which I take as true) that the backpack was beyond Mr. Perez's reach. Decision and Order on Def.'s Mot. to Suppress Evidence 4, 8 (ECF No. 136).

6

contends that the question of the lawfulness of the search of Mr. Perez's backpack is not a substantial one. Gov't's Opp'n 6–7.

I disagree that this is not a substantial question of law. Judge Hornby rightly acknowledged that there is reason to question whether *Eatherton* remains good law in light of *Gant*. Order 8–9. Rather, his only hesitation was whether he, as a district court judge, should be the one to make that call. Order 8–9. He concluded that he should not. But the First Circuit is, of course, differently situated. And on appeal, the First Circuit may well find that *Gant* undermines the continuing vitality of *Eatherton*. *See United States v. Bowers*, 27 F.4th 130, 134 (1st Cir. 2022) (noting that the First Circuit can depart from the holding of a prior panel "when 'an existing panel decision is undermined by controlling authority, subsequently announced' " (quoting *United States v. Holloway*, 630 F.3d 252, 258 (1st Cir. 2011)). Notably, it appears that if this question were before the Third, Fourth, Seventh, Ninth, or Tenth Circuits, each would find that *Gant* repudiated the analysis underlying *Eatherton*, since each has extended *Gant* to arrests outside of the vehicle context. *See United States v. Shakir*, 616 F.3d 315, 318 (3d Cir. 2010); *United States v. Davis*, 997 F.3d 191, 200 (4th Cir. 2021) ("[A]n item is not within a person's immediate control if it is unreasonable to believe that they can access it"); *United States v. Hill*, 818 F.3d 289, 295 (7th Cir. 2016); *United States v. Cook*, 808 F.3d 1195, 1199 n.1, 1200 (9th Cir. 2015); *United States v. Knapp*, 917 F.3d 1161, 1167–69 (10th Cir. 2019).

---

Regardless, it does not affect my analysis as to the substantiality prong, since this argument still necessarily calls into question the proper scope of *Gant*.

7

Given all of this, I have no trouble concluding that it is a close question whether *Eatherton* remains good law and whether the First Circuit might repudiate *Eatherton* and find that *Gant* (as interpreted in, for example, the out-of-circuit decisions cited above) instead governs the search of Mr. Perez's backpack.

## II. The Likelihood Prong

Assuming that *Gant* governs and that *Eatherton* is no longer good law, I next consider whether that contrary conclusion would make a difference here or whether it is harmless. In other words, the pertinent question is whether the evidence found in Mr. Perez's backpack would still be suppressed.

Based on Judge Hornby's factual findings, it seems highly probable that if the First Circuit follows the cases from its sister circuits that I have cited above, the court will find that the search of the backpack was not lawful. However, that is not the end of the inquiry. A finding that a search was unlawful does not necessarily lead to the conclusion that any uncovered evidence must be suppressed. *See United States v. Sparks*, 711 F.3d 58, 62–63 (1st Cir. 2013). Rather, the good faith exception to the exclusionary rule applies "where new developments in the law have upended the settled rules on which the police relied." *Id.* at 68.

The exclusionary rule exists for the purpose of deterring future Fourth Amendment violations. *Davis v. United States*, 564 U.S. 229, 236–37 (2011). So, "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is" not warranted. *Id.* at 237 (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)). But "[w]hen the police comply with authoritative precedent, only to see the law evolve after the fact, there is nothing to deter," and thus the exclusionary rule is

8

inapplicable. *Sparks*, 711 F.3d at 63. That means "where the police rely on precedent that is 'clear and well-settled' " in conducting a search, the fruits of that search will not be excluded. *Id.* at 64 (quoting *United States v. Davis*, 598 F.3d 1259, 1266 (11th Cir. 2010), *aff'd*, *Davis*, 564 U.S. 229). On the other hand, "[t]he justifications for the good-faith exception do not extend to situations in which police officers have interpreted ambiguous precedent or relied on their own extrapolations from existing caselaw." *Id.* at 67–68 (quoting *Davis*, 598 F.3d at 1267).

As Judge Hornby has already determined, I must assume that *Eatherton* remains good law and that I am bound by it. The question, then, is whether *Eatherton* constitutes "clear and well-settled" precedent such that law enforcement would have been entitled to rely on it in conducting the search of Mr. Perez's backpack.

*Eatherton* involved a situation where two FBI agents were surveilling the defendant, Gilbert Eatherton, in preparation for his arrest. 519 F.2d at 609. There came a point when the FBI decided they had probable cause to arrest Mr. Eatherton. *Id.* As they approached him, they saw that he was carrying a briefcase. *Id.* The agents told him he was under arrest, instructed him to drop the briefcase and to lie down on the ground. *Id.* Mr. Eatherton complied, and the agents handcuffed him and placed him in their vehicle. *Id.* They then picked up the briefcase and opened it. *Id.*

On appeal, Mr. Eatherton made a similar argument as the Defendant does here—the agents had no right to open the briefcase once it was "removed from his possession and beyond his possible reach." *Id.* at 610. Nevertheless, relying on the same Supreme Court decisions as the Government relies on to justify the search of

9

Mr. Perez's backpack, the *Eatherton* court concluded that law enforcement could properly conduct "searches in the field immediately incident to the arrest" of property that a defendant had recently been holding. *See id.* at 610–11 ("The line which [the appellant] attempts to draw placing the briefcase beyond the search of his 'person' which [*United States v. Robinson*, 414 U.S. 218 (1973),] and *Gustafson* [*v. Florida*, 414 U.S. 260 (1973),] expressly approve is one requiring gossamer distinctions.").

The facts surrounding the seizure of Mr. Perez and his backpack are remarkably similar. As far as I can tell, the only potentially pertinent difference between these two cases is that in the case of Mr. Eatherton, the briefcase was not opened until Mr. Eatherton was placed in a vehicle, whereas Mr. Perez's backpack was opened while Mr. Perez was still on the ground. However, because Judge Hornby found that the backpack was searched beyond the reaching distance of Mr. Perez, this appears to be a distinction without a difference. The point remains that in neither circumstance was the defendant able to access the item being searched.

Given the similarity of these two cases, it is difficult to see how it could be that *Eatherton* is not the type of "clear and well-settled" precedent on which law enforcement is entitled to rely such that a search conducted in reliance on that precedent would not be protected by the good faith exception. That is, when there is binding precedent almost exactly on point, I do not see how it could be considered unreasonable for law enforcement to rely on it. And thus I do not see how it could be the case that the exclusionary rule could be triggered.

The Defendant makes two arguments for why he believes *Eatherton* does not constitute the type of "clear and well-settled" precedent on which law enforcement can justifiably rely—first, that *Eatherton* is not controlling precedent, and second, that the good faith exception should not apply because of police misconduct. Def.'s Reply to the Gov't's Opp'n to Bail Pending Appeal ("**Def.'s Reply**") 4–11 (ECF No. 219). In making his first argument, the Defendant begins with criticisms of the First Circuit's analysis in *Eatherton* and its reliance on earlier Supreme Court cases. These criticisms are beside the point. The key issue is whether *Eatherton* remains binding, and that has little to do with whether the court got it right. *See Macarthur v. United States*, No. 1:12-cr-00084-JAW, 2020 WL 7079134, at *9 (D. Me. Dec. 3, 2020) ("[T]his Court must adhere to vertical precedent in the First Circuit.").

The Defendant next contends that *Eatherton* is undermined by subsequent Supreme Court precedent, not only *Gant*, but also *United States v. Chadwick*, 433 U.S. 1 (1977), *abrogated by California v. Acevedo*, 500 U.S. 565 (1991). Def.'s Reply 4–5. I disagree that *Chadwick* called *Eatherton* into question for two primary reasons. First, *Chadwick* involved the search of a piece of luggage that was seized from a car and then was searched more than an hour after an arrest, *id.* at 4, so it says little about a search conducted in close proximity to an arrest as in *Eatherton* or a search conducted outside the vehicle context. Second, while *Chadwick*, which arose in the vehicle context, made broad pronouncements about the scope of a search conducted incident to an arrest beyond the vehicle context, this appears to be dicta, and the Supreme Court contradicted this language just a few years later and overruled it a

decade after that. *Compare id.* at 15 ("Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest."), *with New York v. Belton*, 453 U.S. 454, 460 (1981) ("[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."), *overruled by Gant*, 556 U.S. 332, *and Acevedo*, 500 U.S. at 580 ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."). It is thus difficult to say that *Chadwick* undermined *Eatherton* when *Chadwick* itself was subsequently undermined.

The Defendant next points out that the First Circuit has not relied on "*Eatherton* to construe the search of possessions held by an arrestee" since 1977. Def.'s Reply 5. I fail to see the significance of this. The Defendant offers no authority for the idea that if a case is not widely or recently cited it is not precedential. Moreover, the First Circuit has never criticized *Eatherton* or questioned its viability. In fact, Judge Howard cited *Eatherton* in a dissent (post *Gant*) without calling into question its precedential value. *See United States v. Wurie*, 728 F.3d 1, 16 (1st Cir. 2013) (Howard, J., dissenting), *aff'd sub nom. Riley v. California*, 573 U.S. 373 (2014).[4]

---

[4]   The Defendant also says that "[f]urthering the unsoundness of *Eatherton* is the fact that the circuit court opinions relied upon in *Eatherton* are no longer controlling in their jurisdictions." Def.'s

12

Turning to the Defendant's second argument, he contends that the officers are not entitled to rely on the good faith exception because the police conduct here was "unreasonable" and was not "blameless." Def.'s Reply 9–11. For this point, the Defendant cites to language from *Davis v. United States*, which held that law enforcement reliance on binding precedent triggers the good faith exception. *See* 564 U.S. at 241. What *Davis* said was that the "sole purpose" of the exclusionary rule "is to deter future Fourth Amendment violations" and that where that deterrent value is lacking, the exclusionary rule is not triggered. *Id.* at 236–38. In helping to explain this rationale, the Court pointed out "that the deterrence benefits of exclusion 'vary with the culpability of the law enforcement conduct' at issue" and that "[w]hen the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* at 238 (quoting *Herring v. United States*, 555 U.S. 135, 143–44 (2009)). The Defendant takes this language out of context and uses it to treat police behavior as being a separate, independent basis for exclusion—that any reckless conduct by the police (regardless of the relationship between that conduct and the search in question) can be a basis for exclusion even where law enforcement relied on binding precedent in good faith in seizing evidence. That is not what *Davis* said.

---

Reply to the Gov't's Opp'n to Bail Pending Appeal ("**Def.'s Reply**") 6 (ECF No. 219). But that says nothing about the precedential value of *Eatherton* in the context of a district court within the First Circuit—the difference, of course, being that I am bound by First Circuit precedent whereas other circuits can choose to adhere to *Eatherton* (or not) based on how persuasive (or not) they consider it to be.

13

Moreover, the Defendant assumes his own conclusion in a way that seeks to erase the good faith exception from Fourth Amendment jurisprudence. That is, he argues that because, in his view, the officers unlawfully arrested him and unlawfully searched his backpack, the good faith exception cannot apply. Def.'s Reply 9–10. But the good faith exception can *only* come into play when law enforcement is found to have committed some sort of legal violation, because, after all, if law enforcement behaved entirely lawfully, there would be no Fourth Amendment violation in the first place and thus no reason to reach the issue of whether law enforcement had acted in good faith.

Judge Hornby concluded that the officers lawfully arrested Mr. Perez and lawfully searched his backpack. I have no basis here to question whether Mr. Perez was lawfully arrested, and the Defendant has never argued that that issue is a substantial question justifying his release pending appeal. And as for the search of the backpack, I conclude that even if the First Circuit finds that *Gant* undermines the reasoning in *Eatherton* and determines that it is no longer good law, it was and is binding precedent in this circuit until such a decision is made, such that the officers were able to rely on it in good faith in searching Mr. Perez's backpack.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's motion for release pending appeal.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 21st day of April, 2022.